United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Sound Around, Inc., Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 22-23395-Civ-Scola |
| | ) |
| Douglas O'Donnell, Defendant. | ) |

### Order Dismissing Case

Plaintiff Sound Around, Inc., as a purchaser, seeks to recover damages from Defendant Douglas O'Donnell because of a real estate deal that fell apart with the owners—Hialeah Last Mile Fund VII, LLC ("Fund VII") and Hialeah Last Mile, LLC ("Last Mile") (together, the "LLCs")—of an industrial warehouse. (Compl., ECF No. 1 ("Compl. II" or the "Second Complaint").) Sound Around complains that O'Donnell fraudulently induced Sound Around to enter into the agreement and then breached his personal warranty that Fund VII had the power and authority to perform under the parties' purchase agreement. As O'Donnell points out, in his motion to dismiss (Def.'s Mot., ECF No. 6), this is not Sound Around's first attempt to seek relief from the Court because of the collapse of this same transaction. Prior to filing this case, Sound Around filed another lawsuit, that one against the LLCs, lodging claims for reformation of the agreement; breach of contract; and anticipatory breach of contract. (*Sound Around, Inc. v. Hialeah Last Mile Fund VII LLC and Hialeah Last Mile, LLC*, Case No. 22-20652-CIV-Scola (the "First Action"), ECF No. 1, 2nd Am. Compl. (S.D. Fla. Oct. 18, 2022) ("Compl. I" or the "First Complaint").) Sound Around amended its complaint twice in the First Action and then, after the deadline to amend the pleadings had passed and discovery had closed, initiated this new case.[1] Sound Around has responded to O'Donnell's motion (Pl.'s Resp., ECF No. 19), to which O'Donnell has replied (Def.'s Reply, ECF No. 24). Because this case (the "Second Action"), essentially involves the same parties and their privies, and arises from the same nucleus of operative facts as the First Action, the Court **grants** O'Donnell's motion (**ECF No. 6**) and **dismisses** this case, **with prejudice**, for improper claims splitting.

"[I]t is well settled that a plaintiff may not file duplicative complaints in order to expand their legal rights." *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017). This concept, referred to as claim-splitting, "is an

---

[1] This case was initially randomly assigned to United States District Court Judge Joan A. Lenard and then transferred to this Court, as a related case. (ECF No. 25.)

offshoot of res judicata that is concerned with the district court's comprehensive management of its docket, whereas res judicata focuses on protecting the finality of judgments." *O'Connor v. Warden, Florida State Prison*, 754 F. App'x 940, 941 (11th Cir. 2019) (cleaned up). "The claim-splitting doctrine applies where a second suit has been filed before the first suit has reached a final judgment." *Zephyr Aviation III, L.L.C. v. Keytech Ltd.*, 8:07-CV-227-T-27TGW, 2008 WL 759095, at *6 (M.D. Fla. Mar. 20, 2008) (cleaned up). The doctrine serves "to promote judicial economy and shield parties from vexatious and duplicative litigation while empowering the district court to manage its docket." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1236 (11th Cir. 2021). The doctrine, ultimately, "serves to foster judicial economy and efficiency, and to protect parties from the vexation of concurrent litigation over the same subject matter." *Id.* (cleaned up). In evaluating whether a case is duplicative of another, a court must find "(1) mutuality of the parties and their privies, and; (2) whether separate cases arise from the same transaction or series of transactions." *O'Connor*, 754 F. App'x at 941 (cleaned up). To determine whether "successive causes of action arise from the same transaction or series of transactions," a court looks at whether "the two actions are based on the same nucleus of operative facts." *Vanover*, 857 F.3d at 842.

  Both elements are readily met here. As to the mutuality of the parties and their privies, first, Sound Around is the plaintiff in both cases. Next, although O'Donnell is the Defendant in this case and the LLCs are the Defendants in the First Action, the Court has no difficulty concluding, and Sounds Around does not dispute, that O'Donnell is in privity with both entities. "Privity . . . exists where a party to the original suit is so closely aligned to a nonparty's interest as to be his virtual representative." *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1561 (11th Cir. 1990) (cleaned up); *see also In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983) ("Privity exists when there is substantial identity between parties, that is, when there is sufficient commonality of interest.") (cleaned up). Here, O'Donnell, the Defendant in the Second Action, is the "owner and [p]resident" of a company that "manages, owns and controls" both LLCs. (Compl. II ¶¶ 6–7.) As Sound Around itself explains, O'Donnell is "also the primary decision maker" for both LLCs. (*Id.* ¶ 9.) As such, the Court has no difficulty concluding that the close relationship between O'Donnell and the LLCs supports a finding of privity here. *See Balbirer v. Austin*, 790 F.2d 1524, 1527 n. 2 (11th Cir. 1986) (finding owners of a corporation to be in privity with the corporation itself for the purposes of collateral estoppel).

  Next, the Second Action arises out of the same common nucleus of operative facts as the First Action. In the First Action, against the LLCs, Sound Around's claims for reformation, breach of contract, and anticipatory breach, all

spring from the same facts supporting Sound Around's claims for fraud in the inducement and breach of contract against O'Donnell in the Second Action. Both actions arise out of Sound Around's attempt to purchase real estate from the LLCs and are based on the very same purchase agreement. (*E.g.*, Compl. I ¶¶ 8–9, Ex. A ("Purchase Agreement"); Compl. II ¶¶ 11–12, Ex. A ("Purchase Agreement"). As Sound Around explains in both complaints, although both LLCs participated in the negotiations for the sale of a warehouse property, jointly owned by the two LLCs, the Purchase Agreement included only Last Mile as a signatory, omitting Fund VII. (Compl. I ¶¶ 6, 9, 15; Compl. II ¶¶ 7–8, 11–13.) Both complaints also describe how the deal ultimately fell apart when the South Florida real estate market changed and the sellers sought to get out of the contract to pursue more a profitable sale. (Compl. I ¶ 25 ("[the LLCs] realized the real estate market in South Florida had radically changed and determined they would rather pursue a more profitable sale with another buyer"); Compl. II ¶ 17 ("O'Donnell and his team realized industrial warehouses were selling at higher rates than had been agreed to with Sound Around.").) Importantly, both complaints rest on Sound Around's supposition that the assertions set forth in the Purchase Agreement were false. (Compl. I ¶¶ 37–41; Compl. II ¶¶ 20–23, 26–28.)

Sound Around attempts to sidestep the obvious unity of the factual bases of the two actions by insisting that its claims against O'Donnell, in the Second Action, did not accrue until after the First Action had been filed. (Pl.'s Resp. at 5–6.) In support, Sound Around points to allegations in the Second Complaint which Sound Around claims show "it discovered that O'Donnell lied about Fund VII's power to perform the Purchase Agreement only after the [First] Action was filed." (*Id.* at 7 ("This is also when Sound Around discovered the falsity in O'Donnell's warranty—i.e., that Fund VII did not have the power or authority that O'Donnell warranted.") Sound Around's position, that, for example, "O'Donnell's deception" was "reveal[ed] . . . for the first time" only after the First Action was filed (*id.* at 8), however, is plainly belied by its own allegations in the First Complaint. For example, in the First Complaint, Sound Around itself says that it was already aware, as early as December 2021, when Sound Around "began to seek enforcement of the Purchase Agreement," that the LLCs—which, no one disputes, were acting through O'Donnell— "began to take positions indicating that they intentionally decided to omit [Last Mile] from the executed Purchase Agreement in order to deceive and perpetrate a fraud on Sound Around." (Compl. I ¶¶ 7, 27, 37.) According to Sound Around itself, the LLCs' assertions, beginning in December 2021 (months before Sound Around initiated the First Action), "show[ed] that representations made in the Purchase Agreement were false." (*Id.* ¶ 39.) Among the false Purchase Agreement

representations Sound Around identified in the First Complaint are: (1) the "Seller has the legal capacity to convey marketable titled to the Property"; (2) "Seller will convey marketable titled to the Property"; and (3) "Fund VII has full power and authority to enter into and perform the Purchase Agreement in accordance with its terms." (Compl. I ¶¶ 38–41 (cleaned up).) Similarly, the false representations identified in the Second Complaint are (A) "Fund VII has full power to enter into this Contract"; (B) "Fund VII has full power to perform this Contract in accordance with its terms"; (C) "Fund VII has authority to enter into this Contract"; and (D) "Fund VII has authority to perform this Contract in accordance with its terms." (Compl. II ¶¶ 27–28.)

    Aside from Sound Around's conclusory allegations, describing "O'Donnell and his agents" as taking positions "[s]ince the Initial Litigation," "that are completely contrary to representations and written warranties *personally* made by O'Donnell to Sound Around" (Compl. II ¶ 20 (emphasis in original)), Sound Around provides no actual support for its position that its Second Action claims did not accrue until after its First Action had been initiated. Sound Around's vague allegations that O'Donnell and his agents "have taken" positions contrary to the terms of the Purchase Agreement (*e.g.*, *id.*, ¶¶ 21–22) do nothing to undercut the Court's finding that the causes of action in both lawsuits accrued prior to Sound Around's filing of its First Action and arise from "the same transaction or series of transactions." In short, the Court has no difficulty concluding that "the two actions are based on the same nucleus of operative facts."

    Accordingly, in exercising its discretion to do so, the Court **dismisses** Sound Around's second case, **with prejudice**, *Vanover*, 857 F.3d at 837, 842–43 (affirming district court's dismissal of case, with prejudice, for claim splitting).

    The Court directs the Clerk to **close** this case. All pending motions are **denied as moot**.

    **Done and ordered**, at Miami, Florida, on February 28, 2023.

_____
Robert N. Scola, Jr.
United States District Judge